Our next case this morning is Americans Zurich Insurance Company v. Sun Holdings. Mr. Henry. Yes, Your Honor. Good morning. Good morning. May it please the Court. Let me first say it's an honor and a pleasure to be presenting argument in this court as it's my first time in the Seventh Circuit and me and my family's first visit to Chicago, so I thank the Court for this opportunity to present argument. I'd also like to preface my argument by admitting that I understand the uphill climb or the steep hill that parties face when attempting to vacate or modify an arbitration award. But in our view, based on the briefing and what happened in this case, it shouldn't be any easier to convince a court to adopt a rule that contravenes the expressed terms of the arbitration award. So I hope to persuade you that the District Court erred in confirming the award of attorney's fees here because this Court, even if it agrees in principle with Rely Star, need not apply Rely Star in this circuit in whole or follow it to the point where this case would fall within Rely Star's ambit. In one paragraph, the District Court found that the arbitration panel drew its authority to assess attorney's fees for bad faith conduct in arbitration from the case out of the Second Circuit in Rely Star. That allows attorney's fees to be awarded in the face of a specific arbitration provision that basically limits the arbitrator's authority to award attorney's fees. So Mr. Henry, going to your point about the uphill climb here, it doesn't really matter, does it, whether we here agree with the holding in Rely Star or don't agree with the holding in Rely Star, so long as the arbitrators considered it and had some basis in their arbitration agreement to consider it? Isn't that correct? Well, that would fly in the face of this circuit's opinions in Tootsie Roll, the Bush, U.S. Soccer that basically say that an arbitrator's authority is limited by the contract and basically over many cases in which courts across the country, but this— No, I don't think you got the gist of the question. The arbitrator is limited to interpreting the contract, but that doesn't mean interpreting it correctly. Arbitrators here certainly purported to interpret the contract. You've said that you don't agree with their interpretation, but we've said that's not a ground for upsetting an arbitrator's award. What's left? That's correct. There's cases where the word cost is used, and this court has held that if the word cost is used and that could be held to be ambiguous, the arbitrator can interpret the contract. Likewise, there's cases where there's silence on fees this court and other courts have held. That's within the arbitration. What this court has held is that— Counsel, the arbitrators essentially said that clause in the contract adopts the American rule on attorney's fees. Each side bears its own. It's usually understood that the American rule, which applies in almost all federal litigation, does not prevent an award of sanctions for frivolous conduct. The arbitrators say that's the same rule applicable in arbitration. Now, that may be right or it may be wrong, but it's an interpretation of the contract. What am I missing? The question is whether or not they could interpret the contract in a violation of Sixth Circuit precedent. For example, a Seventh Circuit precedent. Let's say the Seventh Circuit had spoken to this issue and said, when a contract says specifically— It's this contract, not what the Seventh Circuit has said about some other contract. Right, except the Seventh Circuit— You seem not to acknowledge a distinction between interpreting the contract, period, full stop, and interpreting the contract correctly. One of your problems is we have said that the refusal to see that distinction is itself sanctionable. But, I understand, but no one has argued that this contract is ambiguous. That's never been the issue. This is not a— And this court has determined that specific provisions on remedies aren't for the arbitrators to interpret. Meaning, if you say you can give all the remedies, but you cannot give a remedy of— You can only give direct damages, and it is limited to $50,000, the arbitrators are not allowed to interpret that. This is an unambiguous provision. But there's another item missing here that this court has recognized. There is a separate clause. This is not just a general provision such as in Rolastar and the other cases cited by Appellee. So, counsel, perhaps you can point us to specific language that you said makes your point that the arbitrators exceeded their contractual authority. So in the arbitration agreement, section O, paragraph 6, there are additional restrictions on an arbitrator's authority. And that is that they may not add, subtract, or modify any of the terms of this agreement. So most of the cases, including Rolastar, say, absent something more than just a arbitrators may not shift fees, courts have— Some district courts under Rolastar have said that preserves the inherent authority to sanction for bad faith conduct in the arbitration. So in this case, we have an additional provision over and above the provision, plus a limitation on damages, which I'm not claiming that attorney's fees in this case are compensatory. What I'm saying is the parties went out of their way in multiple provisions to cabin the arbitrator's authority to award additional remedies, including attorney's fees, yet the district interpret the contract to include the authority to add an additional remedy such as attorney's fees, despite the clear language of the agreement. The agreement, though, does allow the arbitrators or it requires the arbitrators to consider the American Arbitration Association rules, right? That's correct. And as I understand it, looking at Appellee's brief, Rule 49 allows an award of—or allows fee shifting if it's authorized by law. And here, the arbitrator said, well, you know, we think Rolastar gives us that—satisfies that requirement. So it's difficult to see how they exceeded their authority when the contract specifically allows them to look at AAA rules, which they did. And to Judge Easterbrook's point, whether they ended up correctly interpreting Rule 49 or not, that's beyond the scope of our review. I would have two quick responses to that. One, authorized by law, first of all, Rolastar is not particularly law. This court's decision in Merrill Lynch, which we cite, say that the law is—it's controlled by federal arbitration law, meaning not New York law. So what the courts say on construing arbitration agreements is law in the sense that parties have to follow. But authorized by law, lots of provisions, statutory provisions, provide for contract recovery of attorney's fees. In Texas, where I'm from, we have contractual recovery of attorney's fees. But that would not allow the arbitrators to say, well, the arbitration agreement says expressly under no circumstances can you ever award attorney's fees, full stop. And then say, but the rule says authorized by law, so we can contradict the agreement that conveys the authority on us to even sit over this case by an internal rule in the arbitration agreement, in the American Arbitration Rules. Plus, all of the American Arbitration Rules all have the caveat, both in the remedy section and the attorney's fees section, have the party's agreement in there. And of course, all of the case on arbitration says that the first poll star for what arbitration panels can do is the agreement. Then you default within that. So if a panel is there to only provide injunctive relief, it doesn't matter that the rules provide all these other remedies. The parties have only imbued them with the authority to do X. In this case, the parties did not imbue the panel with the authority to award to shift fees. They went on to say there can't be any subtraction, modification, or addition to this agreement, which is not present in the other cases. And in fact, this court in Polk Brothers said that the absence of that additional provision, such as an add, subtract, or modify, mattered. Because it just left the general provision, but it didn't have an additional provision further restricting the arbitration, meaning like, well, we really mean this. I mean, here's the provisions, but we really mean it, that you can't do anything else. So we believe that the rely star, to the extent that, and even in rely star, the cases it cited of the Synergy Gas case, it talked about sanctions for conduct. Here, if you agreed with rely star for the general proposition that arbitrators, despite the language of an agreement, multiple provisions in an agreement, retained some inherent authority to sanction, that would not have to include attorney's fees. As the dissent in rely star put it, you have the arbitrators, like judges, have many tools in their toolbox to deal with conduct that doesn't require attorney's fees if that's been taken, error that's been taken out of the quiver by the parties in their agreement. I would also point out that the sanctionable conduct, if you're going to adopt that as the exception of the American rule, that when a party doesn't mention the American rule, but they prohibit fee shifting in their agreement, they are de facto, without mentioning it, adopting exceptions to the American rule. Why do we have to do any of that in this case? I just don't understand it. Our law is very clear. Arbitration, you accept some risk, right? You agree to arbitration. As long as the decision emanates from the contract, that's it. We're done. There's no role for the federal court to play. That's exactly what happened here. Then every single case vacating attorney's fees as outside the authority of the arbitrator because the arbitration agreement or any remedy that is expressly prohibited, every argument retort to that would simply be they drew it from the arbitration rules. They're completely wrong. It's prohibited by the agreement, but they drew it from a source. They drew it from, or New York law says you can get an injunction, okay, in this case, but the arbitration agreement says you can't. Well, they just missed it. They thought authorized by law meant they could draw it from New York law. There would be no cases vacating specific remedies or vacating attorney's fees if all an arbitrator had to do is say, well, when I interpreted the agreement, I went to the AAA rules. They say authorized by law, and there's some law out there that gives me the authority to give attorney's fees. That's the outline for the panel's jurisdiction. The ability to give an award is in the agreement. They can't go outside an unambiguous agreement, which no one, in fact, I think it's been conceded both below, there's no ambiguity in this agreement. It's clear. The only question is whether or not it gets enforced according to its terms or there's an exception either under Seventh Circuit law or general arbitration law for bad faith conduct. But what I was going to say about bad faith conduct was just a simple, this wasn't just a sanction. So if we're going to import the rule on sanctions, then you have to import it in total. This was a fee shifting of all the fees in the entire case, including the argument that the court should not find bad faith conduct of litigation at the final hearing, meaning they didn't sanction for any specific conduct. They shifted fees for the entire case. And certainly an agreement like this, if you're going to import the American rule, you've got to import the whole thing, the whole bucket of the American rule, and that's the notion of sanctions is not fee shifting for being involved in an entire case for every single filing, every single argument being sanctionable, which no one ever asked for sanctions by the way. There was never a motion, never a request. In fact, the arbitration panel at length extolled the counsel's work on both sides in this case. So the idea that Reliastar or the law even importing the American rule would allow a complete fee shifting in the face of this agreement with its restrictions just completely flies in the face of all of the cases that say the arbitration panel derives its authority from whatever's written in the document. With that, Judge Easterbrook, I'd like to serve the remainder of my time. Certainly, counsel. Thank you. Mr. Whitmer. Good morning, your honors. My name is Stephen Whitmer and I'm counsel for Appellee American Zerk. The panel has already identified the real question here today, and that is whether the arbitrators had any path to their contractual interpretation. If the answer to that question is yes, then this case is over. Because as this court stated last year in Kinsella and has stated over and over again, only if there is no possible interpretive route to the award may a non-contractual basis be inferred and the award set aside. Here, as we've already discussed here today, the panel unquestionably had a contractual path to the final award. The syllogism is easy. First, as Judge Lee already explained, the parties agreed to apply the American arbitration rules. Second, those rules state, as already discussed, that the arbitrators are indeed authorized to award fees as provided by law. Third, the parties agreed to the application of New York law. And fourth, New York law expressly gives arbitrators authority to award fees where there's bad faith conduct, like here. And that is the Reliastar case we've already been discussing. Now, the question is, did the panel rely on Reliastar? The answer is yes. Because the facts of Reliastar are directly on point here. They're, like here, the parties agreed to a contract term saying that each side would bear their own fees, just like the American rule, but then one party acted in bad faith in the arbitration. And the Second Circuit said, well, that fee provision has no application. And the court explained, there is an assumption of good faith in an arbitration. And once a party acts in bad faith, all bets are off. So as the Second Circuit explained, these are sophisticated commercial entities, just like our case here. And the parties could have easily executed a contract term excluding attorney's fees in a situation of bad faith, but they chose not to do so. Now, counsel said that the Sun Holdings was not sanctioned for its conduct. That's just not accurate. As the record will show, there's no question here that the panel found bad faith conduct and indeed entered the attorney fee award as a result. If there's any question about what conduct is at issue, we take a look at the final award because there's pages of facts laying out that bad conduct. For example, Sun Holdings expressly disregarded the panel's pre-hearing security award. As a result, we had to come to federal court, and the federal court upheld the panel's security award, and still Sun Holdings refused to post the collateral until contempt proceedings were commenced before Judge Guzman. In addition, Sun Holdings made conflicting statements to the panel throughout the arbitration, and Sun Holdings never had a valid defense in the arbitration. In fact, Sun Holdings' former risk manager admitted in her testimony that Sun Holdings never even had a dispute with the invoices at issue. And in fact, she admitted that there was no basis for those invoices not to be paid. But nonetheless, she admitted that they didn't pay the invoices because her boss, the CEO, had instructed her, just don't pay the invoices. As a result of that testimony and against that backdrop, she admitted candidly in her testimony that her client, her former employer, Sun Holdings, never acted fairly or honestly with Zurich. It is against that backdrop that this panel entered in its final award, said that all of this activity, all of it is grounded on Sun's conduct in the arbitration. And you read that the panel summarized this bad faith conduct as an ongoing exercise of whack-a-mole. The bad faith efforts just kept popping up incessantly. So, in sum here, the key issue, as this court has already identified, is there was a well-defined path to the final award, full stop. As a result, the panel's final award directly by definition draws its essence from the party's arbitration agreement. Finally, there's two other arguments that Sun Holdings advanced. They both fail. First, Sun claims that the arbitration was somehow unfair or that the panel was biased. But Sun Holdings never presented those arguments below and, in any event, never presented any facts that would even come close to supporting those accusations. And second, Sun Holdings claims there was some sort of evident miscalculation of figures in the award. Again, that's really nothing more than a disagreement with the panel's fact finding. There's no facts that would support Sun Holdings' position on that issue either. In closing, the gravity of this case is obvious. A decision not to affirm would create bad precedent. It would allow a party to participate in an arbitration in bad faith with impunity, knowing that it could just hide behind the American rule to avoid paying its opponent's attorney's fees at the end of the day. By definition, that would be a bad result for all future arbitrations in this circuit. So unless this panel has any questions for me, I have nothing further. Thank you, Mr. Whitmer. Anything further, Mr. Henry? Yes, briefly, Judge Easterbrook. It will be brief since I only have a minute 38 left. So basically, the appellant's argument boils down to, even though Section 606 of the agreement in the record says that the arbitrators shall not limit, expand, or modify the terms of the agreement, nor award damages in excess of compensatory damages under this agreement, if the arbitrators had awarded something above compensatory damages, such as punitive damages, because of the AAA rule that references authorized by law, he would be able to say, well, New York law allows punitive damages here, so it draws its essence from the law through the rules, even though it's contrary to that provision in the agreement. That's not the way it works. Every case that deals with vacating or modifying remedies, including this circuit's, deal with what does the contract say first, not second. You don't go digging around for areas of law. You say, what power do they have? The other thing regarding the American rule and that synergy case I cited that Reli star relied on, that is bad faith conduct, not bad faith participation or not coming up with a defense. It's bad faith conduct, and that case said, sanctions for the conduct that recoups the fees they incurred because of the conduct in the arbitration. Every case says in the arbitration. Their position is, because a former employer testified we had no basis to not pay the invoices, the entire arbitration is in bad faith, period. So they could shift fees for the entire case. That's not the American rule or any rule on sanctions. Thank you, counsel. Thank you, your honor. The case is taken under advisement.